UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-11989 RGS

JAMES EASLER,
MICHELLE STONE-EASLER, and
INSURANCE COMPANY OF
STATE OF PENNSYLVANIA,

v.

DELTA AIR LINES, INC.,
FREEDOM AIRLINES, INC.,
MESA AIR GROUP, INC., and
COMAIR, INC.,

MEMORANDUM AND ORDER ON DEFENDANT
DELTA AIRLINE'S MOTION TO DISMISS

October 21, 2011

STEARNS, D. J.

After service was made, defendant Delta Airlines (Delta) moved to dismiss itself from Count I of Insurance Company of Pennsylvania's Amended Complaint and Counts I and II of James Easler's and Michelle Stone-Easler's Amended Complaint, on grounds that it owed no duty to any party involved in the litigation. On May 26, 2011, the court converted Delta's motion to dismiss to one for summary judgment. The court then ordered Delta to produce "all evidence that it is not directly or indirectly liable for James Easler's injuries," and allotted an additional period of time for plaintiffs to marshal facts "to refute Delta's evidence or otherwise concede the issue." After

discovery on this issue, plaintiffs jointly assert that there is a dispute of fact as to whether Delta had de facto "operational control" over the Freedom Airlines/Mesa Group aircraft that was undergoing repairs at the time of Easler's alleged accident.

The parties now agree that discovery establishes that the mechanic making the repairs to the aircraft (Edwin Vilchez) is and was at all times an employee of Freedom and not Delta. Plaintiffs nonetheless maintain that the work on the plane had begun in a Delta hangar and that Delta later directed Vilchez and his local escort (Orr Jones, an employee of defendant Comair) to move the plane to another area of the airport to finish their work. On October 12, 2011, the court held a hearing on Delta's motion for summary judgment.

Based upon the representations of Delta's counsel, Vilchez's deposition testimony, and Delta's Third Supplemental Memorandum furnishing the court with its answers to plaintiffs' interrogatories, the court is satisfied that Delta should be dismissed from the case. Delta's role, such as it was, did not as a matter of law rise to the level of "meaningful control [over the repair], however minimal" – the "critical factor" in determining whether Delta owed a duty of care to Easler. In *Corsetti v. Stone*, 396 Mass. 1 (1985), the Supreme Judicial Court explicitly adopted § 414 of Restatement (Second) of Torts (1985), as the test govern the liability of an employer for the negligence of an independent contractor. *Id*. at 9-10. Section 414 states: "One

who entrusts work to an independent contractor, *but who retains the control of any part of the work*, is subject to liability for physical harm to others whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." *Id*. at 10 (emphasis added). *See also Dilaveris v. W. T. Rich Co.*, 424 Mass. 9, 12 (1996) (general contractor liable where it was required by the language of the contract to "supervise and direct the work," including all safety aspects). *Compare Lyon v. Morphew*, 424 Mass. 828, 835 (1997) ("[A] general right to order the work stopped or resumed, to inspect its progress, or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations," is not sufficient control to trigger liability, quoting Restatement § 414).[1]

Delta attests that, from 2005 to 2010, Delta Connection planes were operated and maintained by agents of Freedom Airlines, Inc., and Mesa Group, Inc., under the contractual provisions of the Delta Connection Agreement (previously been produced to plaintiffs). The Delta Connection lease at issue required Mesa to "inspect, maintain, service, repair, and overhaul (or cause to be inspected, maintained, serviced, repaired,

---

[1] Plaintiffs' arguments repeatedly confuse the issue of whether Delta retained control over its hangar and runway space at Logan Airport with control over the work to be done on the plane itself, which is the test under § 414.

and overhauled) the Aircraft." It further specified that Freedom was to operate and maintain the Aircraft "in strict compliance" with Freedom's Operations Manual and any applicable government regulations. Vilchez testified that he was a maintenance lead mechanic employed by Freedom and Mesa in December of 2007 when he came to Boston to "troubleshoot the maintenance issue" on an aircraft "where somebody got hurt." Vilchez Dep. at 41, 54. Vilchez candidly testified to being "primarily responsible" for operations of the aircraft; agreed that he held the "non-delegable responsibility for ensuring that the aircraft" was ready to operate when he engaged the engines; that he was "in total response – responsibility" at the time the alleged accident occurred; and that he was "fully responsible" for whatever ensued. *Id.* at 78-81. On its facts, this case is indistinguishable from *Foley v. Rust Int'l*, 901 F.2d 183, 184-185 (1st Cir. 1990), cited by the Supreme Judicial Court in *Dilaveris, supra* at 12, as a case where a subcontractor's agreement to take responsibility for all aspects of safety on the jobsite absolved the general contractor of liability.[2]

ORDER

For the foregoing reasons, Delta Airline's motion for summary judgment is

---

[2] Also significant on the meaningful control issue is Delta's sworn statement that the first it was aware that any alleged accident had occurred was when it was served with the plaintiffs' Complaints.

ALLOWED and Delta is DISMISSED as a defendant in the case. The dismissal will enter without prejudice to permit plaintiffs to revisit the control issue in the unlikely eventuality that evidence should develop that Delta has in some material respect misrepresented the nature of its contractual relationship with defendants Freedom and Mesa.

    SO ORDERED.

    /s/ Richard G. Stearns

    _____
    UNITED STATES DISTRICT JUDGE