UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAMES EASLER,
MICHELLE STONE-EASLER, and
INSURANCE COMPANY OF
STATE OF PENNSYLVANIA,

        Plaintiffs,

v.

DELTA AIR LINES, INC.,
FREEDOM AIRLINES, INC.,
MESA AIR GROUP, INC., and
COMAIR, INC.,

        Defendants.

Civil Action No. 1: 10-cv-11989 RGS

**OPPOSITION TO COMAIR'S MOTION FOR LEAVE
TO AMEND CROSS-CLAIM**

**PRELIMINARY STATEMENT**

Mesa Air Group, Inc. ("Mesa") and Freedom Airlines, Inc. ("Freedom") respectfully submit this opposition to Comair, Inc.'s ("Comair's") motion for leave to amend its cross-claim. Comair erroneously bases its claim for contractual indemnity against Freedom on an agreement for maintenance services that was not in effect between Comair and Freedom at Logan International Airport on December 20, 2007. Additionally, Comair, as an affiliate and agent of Delta, has agreed to release all claims, known or unknown, against Mesa and Freedom under the terms of the Settlement Agreement and Mutual Releases ("Settlement Agreement") that was made and entered into among Mesa, Freedom and Delta during Mesa and Freedom's bankruptcy proceedings. *See In re: Mesa Air Group. Inc. et al.*, Case No. 10-10018-MG (Bankr. S.D.N.Y.).

**ARGUMENT**

**I.
COMAIR'S CONTRACTUAL INDEMNITY CLAIM IS FUTILE BECAUSE
THE MAINTENANCE AGREEMENT RELIED ON BY COMAIR
WAS NOT IN EFFECT AT THE TIME OF THE INCIDENT**

Comair seeks leave to amend its cross-claim to assert a contractual indemnity claim against Freedom based on an Aircraft Maintenance Services Agreement ("Maintenance Agreement") that was produced in this litigation by virtue of Comair's filing of this motion on the electronic docket, and thereafter in a recent document production by Comair. As admitted by Comair, the Maintenance Agreement could provide a potential basis for a contractual indemnity claim *only* if it was in effect at Boston's Logan International Airport ("Logan") on the date of the alleged incident, December 20, 2007. The express terms of the Maintenance Agreement conclusively

2

belie Comair's position, however, because the agreement was in effect at only three airports on that date − *but not* at Logan.[1]

The Maintenance Agreement was entered into by and between Freedom and Comair on April 18, 2007.  *See* Exh. 1 to Comair's Motion (Dkt. 45-2, pp. 4-11)  Exhibit A of the Maintenance Agreement states that Comair was to provide on-call mechanic and maintenance services at Greater Cincinnati International Airport (CVG) in Cincinnati, Ohio; Piedmont Triad International Airport (GSO) in Greensboro/High Point, North Carolina; and Blue Grass Field (LEX) in Lexington, Kentucky.  *Id*. at p. 11.  Paragraph 2 of Exhibit A defines the Services to be provided by Comair as follows:

> (a) Provide FAA-licensed Airframe and Power Plant mechanic services to Customer on a twenty-four hour per day, seven days a week on-call basis.
>
> (b) Perform maintenance in accordance with Customer's instructions, manuals, and directives and Customer's FA approved maintenance program.

*Id*.

Section 13 of the Maintenance Agreement expressly provides that the Agreement "shall not be modified or amended in any respect except by a written agreement executed by an authorized representative of each of the Parties."  *Id*. at p. 9.

Comair also attaches to its motion an unexecuted copy of a First Amendment to the Aircraft Maintenance Services Agreement, dated January 10, 2008 ("First Amendment").  See Exh. 1 to Comair's Motion, Dkt. 45-2 at pp. 1-3.  The First Amendment adds Logan International Airport in Boston to the list of locations where Comair is to perform maintenance services.  The First Amendment states that it "shall go

---

[1] As highlighted by the lack of a certification under Local Rule 7.1(a)(2), counsel for Comair failed to contact and confer with counsel for Freedom before filing its motion.  Had he done so, the parties could have discussed the status of the Maintenance Agreement at Logan and possibly avoided this motion.

3

into effect on January 18, 2008." It is undisputed that the stated effective date of the First Amendment, as well as its execution date, is *subsequent* to the date of the incident that allegedly caused Plaintiff James Easler's injuries. Nonetheless, Comair claims that

> while the amendment to add Boston as a service location post-dated the Easler incident by some thirty days, the course of conduct of the parties at the time had been to include Boston.

Comair's Mot. at 3. This allegation of a "course of conduct" by the parties in December 2007 at Logan International Airport is unsupported by fact, common sense, and the express terms of the Maintenance Agreement. No "course of conduct " existed between Freedom and Comair in December 2007 at Logan for mechanic and maintenance services as contemplated under the First Amendment. *See* Declaration of Christopher Pappaianou, at ¶ 8. Had there been a "course of conduct" to include Logan as a location of such services, Freedom would not have sent a Freedom mechanic to Logan International Airport on December 20, 2007 to perform the maintenance services that the First Amendment contemplated that Comair would perform. *Id.*

Moreover, Comair has not met its burden to demonstrate a "course of conduct" that it now asserts as a basis to amend its pleading. Other than its wholly self-serving conclusory statement, Comair proffers no evidentiary support that there was a "course of conduct" between the parties prior to January 18, 2008 "to include Boston" as one of the locations of Services.

Comair's assertion is further undermined by the fact that the First Amendment provides that services would take effect at Logan on a date certain, *i.e.*, January 18, 2008. Had the parties actually been engaging in the course of conduct asserted by Comair, the

First Amendment would have acknowledged such fact or provided for an earlier effective date.

Additionally, the Maintenance Agreement expressly requires that any amendment be *in writing* and *executed* by the parties' authorized representatives.  *See* Section 13, Modifications and Amendments, Dkt. 45-2 at p. 9.  A "course of conduct" is not a *written* modification, and the copy of the First Amendment proffered by Comair to this Court is not executed.  Ohio law, which governs the Maintenance Agreement (*see* Section 10, Governing Law, Dkt, 45-2 at p. 9) is well-settled on contractual requirements for written modifications:

> Ohio law is very clear that a contract that expressly provides that it may not be amended, modified, or waived except in writing executed by the parties is not subject to oral modification.

*Kelley v. Ferraro*, 936 N.E.2d 986,994 (Ohio App. 8 Dist. 2010) (citing cases).

Finally, even if the First Amendment was in effect in December 2007 at Logan, Section 10 of the Maintenance Agreement requires that "any disputes arising out of or in connection with this Agreement, including any action in tort" be brought exclusively in the federal and state courts having a situs in Kenton, Boone or Campbell County, Kentucky.  *See* Section 10, Governing Law, Dkt. 45-2 at p. 9.  Accordingly, under the express terms of the Maintenance Agreement, Comair is not entitled to bring this contractual indemnity claim in this Court.

Based on the foregoing, there can be no dispute that Comair's indemnification claim would not withstand a motion to dismiss.  When it would be futile to allow a complaint to be amended because the new assertions would fail to withstand a motion to dismiss, leave to amend should be denied.  *See Vengerik v. New York Life Ins. Co.*, 1993

5

WL 97616 (D. Mass. Mar. 30, 1993); *Moore v. Eli Lilly & Co.*, 626 F. Supp. 365, 366 (D. Mass. 1986). Accordingly, this Court should deny Comair's motion for leave to assert the claim.

## II.

### COMAIR RELEASED FREEDOM FROM ANY LIABILTY RELATING TO THE 2007 INCIDENT

On January 5, 2010, Mesa filed a Voluntary Petition for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of New York. *See In re: Mesa Air Group. Inc. et al.*, Case No. 10-10018-MG (Bankr. S.D.N.Y.). Mesa, Freedom and other entities were collectively referred to as the "Debtors" in this bankruptcy proceeding. The effective date of the Debtors' reorganization plan was March 1, 2011.

In the bankruptcy proceedings, the Debtors and Delta Air Lines, Inc. ("Delta") reached an agreement concerning claims between them. The Debtors filed a *Motion for Authorization to Approve the Determination, Settlement, and Allowance of Certain Claims of Delta Air Lines, Inc.*, filed January 4, 2011. Exhibit A to that Motion is a Settlement Agreement and Mutual Releases ("Settlement Agreement") made and entered into by and between Mesa, Freedom and Delta, executed as of December 13, 2010. *See* Pappaioanou Decl., at ¶¶ 10-11 and Exh. 1.

The Settlement Agreement provided that it would take effect upon entry of a final order by the bankruptcy court approving the agreement. On January 26, 2011, the court signed and entered an *Order Authorizing the Determination, Settlement, and Allowance of Certain Claims of Delta Air Lines, Inc.*, thus approving the Settlement Agreement. See Pappaioanou Decl., at ¶ 12 and Exh. 2.

The Settlement Agreement includes Mutual Releases of claims by Delta of the Debtors, and the Debtors of Delta. The Mutual Releases are broadly worded. For example, not only Delta, but also "its affiliates, constituents, predecessors, successors, agents and assigns," release the Debtors of any and all claims, whether *known or unknown*, that "arose or could have arisen or been asserted" before the Effective Date of the Settlement Agreement, i.e. January 26, 2011. Likewise, the Debtors and their "bankruptcy estates, affiliates, constituents, predecessors, creditors, agents and assigns" release Delta of any and all claims, whether *known or unknown*, that "arose or could have arisen or been asserted" before January 26, 2011. Specifically, the Settlement Agreement and Mutual Releases state as follows:

*** 

> 2. Release by Delta.  Delta, … on behalf of itself, *its affiliates, constituents, predecessors, successors, agents and assigns*, for good and valuable consideration, receipt of which is hereby acknowledged, forever releases, discharges and acquits the Debtors, the Debtors' bankruptcy estates, employees, officers, directors, shareholders, attorneys, successors, and assigns *from any and all claims, causes of action, suits, debts, obligations, liabilities, demands, credits, rebates, refunds, contests, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, or any other obligation, claim or demand whatsoever that arose or could have arisen or been asserted prior to the Effective Date* (defined below).
>
> 3. Release by Debtors.  The *Debtors, on behalf of themselves, the Debtors' bankruptcy estates, their affiliates, constituents, predecessors, successors, creditors, agents and assigns* for good and valuable consideration, receipt of which is hereby acknowledged, now and forever release, discharge and acquit Delta and its employees, officers, directors, shareholders, attorneys, successors, and assigns from any and all claims, causes of action, suits, debts, obligations, liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, or any other obligation, claim or demand whatsoever that arose or could have arisen or been asserted prior to the Effective Date (defined below).

>4. <u>Release Includes Unknown or Unsuspected Claims</u>.  Except as provided in this Agreement, it is expressly understood and agreed by the Parties to this Agreement that the Parties' waiver, release, discharge and acquittal of claims extends to *all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected* except as expressly set forth herein.
>…
>
> ***
>
>7. <u>Effective Date</u>.  This Agreement shall be deemed approved and become binding and effective upon an entry of a final order by the Bankruptcy Court approving the Agreement ("the Effective Date")….

*See* Exh. 1 to Pappaioanou Decl. (emphasis added).

Comair, a wholly-owned subsidiary of Delta, is Delta's affiliate.  Black's Law Dictionary defines an "affiliate" as "a corporation that is related to another corporation by shareholdings or other means of control; a *subsidiary*, parent or sibling corporation." Black's Law Dictionary 63 (9th Ed. 2009)(emphasis added); [2] *see also Smallwood v. NCSoft, Inc.,* 730 F. Supp. 2d 1213, 1229 n.4 (D. Haw. 2010) (parent company of a wholly-owned subsidiary qualifies as both a shareholder and an affiliate of the subsidiary); *Cold Stone Creamery, Inc. v. Lenore Foods LLC*, 2007 WL 4336064, at *2 (N.D. Fla. 2007) (companies owned by same person are affiliates).

It is undisputed that Mr. Easler's injury arose from an incident that took place on December 20, 2007, and that the cross-claim that Comair seeks to assert arises from that incident.  Under the express terms of the Mutual Releases, it is irrelevant whether any of the parties, including Comair, knew of the Plaintiffs' claims or this action at the time it was filed because the text of the release is so broadly worded to expressly encompass any

---

[2] Under New York law, which governs the Settlement Agreement, it is common practice to look to dictionary definitions for the ordinary meaning of contract terms.  *See 2619 Realty, LLC v. Fiduciary & Guaranty Inc. Co.*, 303 A.D.2d 299, 300-301 (1st Dep't 2003).

and all claims *unknown or known, suspected or unsuspected* that arose, could have arisen or been asserted before the effective date of the Settlement Agreement.

Based on the foregoing, Comair has released Freedom from any claim for indemnification arising from this incident and the motion, therefore, should be denied.

Dated: November 14, 2011

>Respectfully submitted,
>
>HOLLAND & KNIGHT LLP
>
>s/Elizabeth M. Mitchell
>Elizabeth M. Mitchell, Esq.
>(BBO No.: 638146)
>10 St. James Avenue
>Boston, MA 02116
>Tel: 617-523-2700
>
>*and*
>
>Judith R. Nemsick
>(*pro hac vice*)
>Holland & Knight LLP
>31 West 52nd Street
>New York NY 10019
>Tel: 212-513-3514
>
>*Attorneys for Defendants*
>*Mesa Air Group, Inc. and*
>*Freedom Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

      I, Elizabeth M. Mitchell, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 14th day of November, 2011.

                                                  /s/ Elizabeth M. Mitchell
                                                  Elizabeth M. Mitchell

Dated:  November 14, 2011